# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRANDON LIZOTTE (#432994)**                              CIVIL ACTION

**VERSUS**

**JAMES LEBLANC, ET AL.**                                  NO. 09-0977-RET-CN


### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, December 6, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**BRANDON LIZOTTE (#432994)**                                    **CIVIL ACTION**

**VERSUS**

**JAMES LEBLANC, ET AL.**                                         **NO. 09-0977-RET-CN**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' cross-motions for summary judgment, rec.doc.nos. 28, 47 and 84.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Secretary James LeBlanc, Warden Burl Cain, Ass't. Warden Richard Peabody, Legal Programs Director Trish Foster, Lt. Cindy Vannoy, Msgt. Clara Knapps, Msgt. Samantha Davis, Msgt. Deloris Major, Msgt. Donna Ott and Msgt. Cynthia Nicholas, contending that the defendants have violated his constitutional rights through religious discrimination, through improper refusal and confiscation of his incoming mail and publications, and through retaliation in response to his exercise of First Amendment rights. The plaintiff has since moved for and been granted a voluntarily dismissal of his claims asserted against defendants Trish Foster and Cindy Vannoy. See rec.doc.nos. 30 and 49.

The plaintiff moves for partial summary judgment, asserting therein that Regulation No. C-02-009 of the Louisiana Department of Public Safety and Corrections, dealing with "Inmate Mail and Publications", is unconstitutional on its face, being allegedly "unconstitutionally vague, overbroad, and racially discriminatory".

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, a Notice of Rejection of photographs dated July 18, 2008, several copies of photographs disallowed to the plaintiff, pertinent excerpts from the plaintiff's administrative remedy proceedings, Department Regulation No. C-02-009 (relative to Inmate Mail

and Publications), correspondence dated January 28, 2010, from the plaintiff to Sgt. Campbell, the affidavits of defendants Burl Cain, Deloris Major and Richard Peabody, the affidavits of former defendants Trish Foster and Cindy Vannoy, and the affidavits of Tara Bonnette, Rhonda Z. Weldon and Trevor Campbell.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Federal Rules of Civil Procedure.

The plaintiff alleges in his Complaint, as amended, that when he arrived at LSP in December, 2006, he was classified at that time to the working cellblocks. He complains that he was not thereafter allowed to attend weekly Muslim worship services whereas his Christian cell-mate was allowed to attend weekly Christian services, and even the plaintiff himself was allowed to attend Christian services. The plaintiff contends that Muslim inmates were afforded fewer opportunities to pursue their religious beliefs than were Christian inmates with the same security status. He also complains that since his arrival at LSP, the prison mailroom has been refusing to allow him to receive through the mails hundreds of books, photographs, periodicals and audio recordings. Specifically, as itemized in detail in his Complaint, as amended: (1) in November, 2007, defendant Knapps refused to allow the plaintiff to receive an issue of "King" magazine, purportedly because it contained nudity or sexually explicit material; (2) in February, 2008, a similar refusal was made with regard to the February issue of "Maxim" magazine, (3) in February, 2008, defendant Davis disallowed several photographs sent to the plaintiff, purportedly because the photographs "depicted women in suggestive poses"; (4) between April, 2008, and July, 2009,

defendant Major disallowed approximately 50 photographs which the plaintiff contends were merely commercial copies of photographs which had already appeared in approved issues of "King" magazine; (5) in November, 2008, defendant Ott refused to allow a book entitled Women on Top. Further, in making this refusal, defendant Ott failed to provide the plaintiff with a formal Notice of Rejection (which the plaintiff contends was necessary for him to return the book for a refund) and also failed to return to the plaintiff the sales invoice, which caused the plaintiff to be unaware that a second publication, "National Lampoon's Magazine Rack", had been lost or misplaced. As a result, when the plaintiff later submitted a "lost property claim form" for the latter publication, it was wrongly rejected by defendant Foster as being untimely, notwithstanding that it was defendant Ott's fault alone which caused the claim to be untimely; (6) between October, 2008, and January, 2009, defendant Knapps withheld several issues of a fashion magazine, "Vanidades", purportedly because it contained sexually explicit material, whereas the plaintiff asserts that this magazine "rarely contains nudity". Shortly thereafter, in February, 2009, defendant Knapps began to refuse "Vanidades" solely because it is written in Spanish; (7) on May 4 and October 26, 2009, defendant Knapps disallowed separate issues of the "New Yorker" magazine, and when the plaintiff appealed these determinations, the magazines were provided to him and contained no objectionable material whatever; (8) in April, 2009, defendant Nicholas disallowed a book entitled Who's Been Sleeping in Your Head, purportedly because it contained "verbal depictions of sex acts", whereas the plaintiff asserts that this non-fiction educational book should have been allowed because Department Regulation No. C-02-009 provides that "sexually explicit material shall not be refused if its content is for medical, educational, or anthropological purposes"; (9) in June, 2009, defendant Davis refused an art history book entitled Invisible Dragon: Essays on Beauty, purportedly

because it contained "pictoral depictions of sex acts"; (10) In July, 2009, defendant Davis refused to allow two recordings of comedians on audio discs, purportedly because they contained "explicit lyrics"; (11) in September, 2009, defendant Major disallowed two photographs and an issue of "Esquire" magazine, purportedly because the photographs "depicted exposed breasts" and because the magazine "contained nudity or sexually explicit material"; and (12) over the past three years, the defendants have confiscated numerous issues of the plaintiff's presumptively acceptable magazines, sometimes without providing a reason for the confiscation. The plaintiff complains that Department Regulation No. C-02-009 is "unconstitutionally vague, overbroad, and racially discriminatory", both on its face and as applied by the defendants, and that publications oriented toward depictions of black women are treated differently than those oriented toward depictions of white women. Finally, the plaintiff asserts that the defendants' actions in repeatedly confiscating his magazines, books and photographs are motivated by retaliatory animus in response to the plaintiff's many administrative grievances filed relative to the defendants' actions.

Addressing first the defendants' motion for summary judgment, rec.doc.no. 47, the defendants assert that the plaintiff has failed to exhaust administrative remedies relative to most of his claims as mandated by 42 U.S.C. § 1997e. Pursuant to this statute, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a lawsuit in federal court relative to prison conditions. This provision is mandatory and applies broadly to "all suits about prison life". Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.ed.2d 12 (2002). Further, a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. Johnson

v. Johnson, 385 F.3d 503 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).

From a review of the plaintiff's administrative grievances, it appears that the defendants' motion is, for the most part, well-taken. In his original and amended Complaints, the plaintiff makes reference to grievances Nos. LSP-2007-2416, LSP-2007-3636, LSP-2008-0569, LSP-2008-1979, LSP-2008-2196, LSP-2008-3552, LSP-2008-3609, LSP-2008-3705, LSP-2009-0185, LSP-2009-0687, LSP-2009-1687, and LSP-2009-2081[1] as being the grievances which he filed wherein he asserted the claims which he now seeks to pursue in this litigation. It appears clear, however, that more than half of these grievances (or nine out of the twelve) were not exhausted through the prison's administrative process. Specifically, the record reflects that the plaintiff submitted correspondence to prison officials on March 11, 2008, wherein he explicitly requested that all grievances then pending be voluntarily withdrawn. The records submitted by the defendants reflect that grievances then pending included, among others not pertinent to this proceeding, grievances Nos. LSP-2007-3636 and LSP-2008-0569 (underlined above). Thereafter, the plaintiff submitted an explicit written request that grievances Nos. LSP-2008-3552 and LSP-2008-3705 (underlined above) be withdrawn. In addition, in subsequent correspondence dated March 12, 2009, the plaintiff explicitly stated that he had received "partial relief" relative to grievance No.

---

[1] For purposes of clarity, the grievance numbers of grievances which have not been administratively exhausted are underlined.

LSP-2008-1979 (underlined above), and requested that three other grievances be accepted for review "as soon as possible". Thereafter, on December 8, 2009, the plaintiff submitted correspondence to the LSP Legal Programs Department wherein he submitted a new grievance, requested that the new grievance be addressed immediately, and reiterated a request that all pending grievances be withdrawn, "since my claims are in the court's hands now." According to the defendants' records, it appears that the then-pending grievances on that date included grievance No. LSP-2008-3609 (underlined above). Finally, it appears that the plaintiff's grievances Nos. LSP-2009-0185 and LSP-2009-1687 (underlined above) were rejected upon initial review because they contained multiple claims in violation of prison rules, and that grievance No. LSP-2009-2081 (underlined above) was rejected upon initial review as untimely, having been submitted more than ninety (90) days after the events complained of. Accordingly, it appears clear from the records submitted by the defendants that all of the underlined grievances have not been exhausted through the prison administrative procedure and that the only administrative grievances which arguably <u>have</u> been administratively exhausted are grievances Nos. LSP-2007-2416, LSP-2008-2196, and LSP-2009-0687.[2]

---

[2] The plaintiff seeks to argue that he should be excused from the exhaustion requirement because prison officials have abused the process and have, by their actions, prevented him from proceeding with his administrative grievances. The plaintiff's contentions in this regard are unpersuasive. It appears from the record that, in addition to the twelve grievances listed by the plaintiff as relevant to this cause of action, he has filed no fewer than 40 additional grievances at LSP, some of which are addressed to the issue of receipt of publications and many of which are addressed to other issues. The plaintiff should not be allowed to inundate the prison with a multitude of administrative grievances and then complain that the grievances have not been handled in a sufficiently expeditious manner. Pursuant to established procedure, the plaintiff always had the right to voluntarily withdraw any earlier-filed grievances in order to have

Turning to the three administrative grievances which arguably have in fact been exhausted, the plaintiff asserted in grievance No. LSP-2007-2416, which is dated July 14, 2007, that upon arrival at LSP in December, 2006, he was classified to the working cellblocks and that discriminatory restrictions were placed upon the exercise of his religious beliefs. Specifically, he complained that he was not allowed out of the working cellblocks to attend Friday prayer with fellow Muslims whereas Christian inmates with the same custody status were allowed to congregate on Sundays on a regular basis. This grievance was denied at the first step on August 22, 2007, and at the second and final step on October 19, 2007.

It is clear that the claim asserted in this grievance is not properly before the Court. In this regard, it is well settled that in actions brought pursuant to 42 U.S.C. § 1983 cases, federal courts look to the most consonant statute of limitations of the forum state. <u>Owens v. Okure</u>, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); <u>Kitrell v. City of Rockwall</u>, 526 F.2d 715 (5th Cir.), <u>cert. denied</u>, 426 U.S. 925, 96 S.Ct. 2636, 49 L.Ed.2d 379 (1976). For § 1983 cases brought in Louisiana federal courts, the appropriate statute of limitations is one year. Louisiana Civil Code Article 3492; <u>Elzy v. Roberson</u>, 868 F.2d 793 (5th Cir. 1989); <u>Washington v. Breaux</u>, 782 F.2d 553 (5th Cir. 1986); <u>Kissinger v. Foti</u>, 544 F.2d 1257 (5th Cir. 1977). Although Louisiana tolls the one-year limitations period while a prisoner pursues the state's mandatory administrative remedies, <u>Kimbrell v. Cockrell</u>, 311 F.3d 361 (5th Cir. 2002), the plaintiff's administrative records make clear that his grievance relative to this claim was decided and denied in October, 2007, well more than one year prior to commencement of this

---

later-filed grievances addressed. The plaintiff has not convincingly shown the Court that the defendants have prevented him from pursuing his administrative remedies.

litigation.  Accordingly, it appears clear that the plaintiff's claim in this regard is time-barred.[3]

Turning next to the plaintiff's claims asserted in grievances No. LSP-2008-2196 and LSP-2009-0687, which are dated July 22, 2008, and February 20, 2009, respectively, the plaintiff complained in the former grievance that a photograph sent to him from a family member was wrongly confiscated on July 18, 2008, for the stated reason that it was of a "child in unacceptable photo",[4] and in the latter grievance that four books which were ordered for him by a family member were delivered to the prison in December, 2008, but were thereafter lost or misplaced. Addressing first the grievance relative to the child in a purportedly unacceptable photograph, the Court has reviewed the referenced photograph, and it depicts a fully nude infant with a humourous caption thereunder suggesting that the infant resembles the "Michelin Man".

---

[3]  The plaintiff argues that the referenced discriminatory practices amount to a "continuing wrong" for which prescription did not begin to run until the alleged wrongful conduct ceased. However, the plaintiff concedes that the alleged wrongful conduct ceased in 2007 and did not resume until, at the earliest, July, 2010.

[4]  In its entirety, grievance No. LSP-2008-2196 states:

> On 7/18/08, M.Sgt. D. Major refused photographs from my family residence.  The stated reason for rejection was that the photo was of a child in an unacceptable photo.  There is no way my family would send any questionable pictures, especially of children.  I am here for stabbing a person to death, there is no reason for anyone to suspect me of being a child predator.
> Sgt. Major has a very twisted judgment of my family photo.  There's no reason for anyone to judge a family photo as unacceptable.  Only a pervert would find such a picture to be of a sexual nature.  If that's his determination, he or she should be working in another position.
> This is the second obvious error in mail censorship regarding my incoming mail in one month.  Better supervision is needed in the mailroom.

Notwithstanding the humourous nature of the referenced photograph, prison officials made a determination to withhold this photograph from the plaintiff in accordance with Departmental Regulation C-02-009, which precludes receipt or possession by inmates of photographs which "expose the genitals [or] genital area".

In response to the plaintiff's allegations relative to the referenced photograph, articulated in grievance No. LSP-2008-2196, the defendants contend that they are entitle to qualified immunity. Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. Second, the district court looks to whether the rights allegedly violated were clearly established. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. Id. In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because he has failed to allege facts in the Complaint which would support a finding that they participated in any violation of his

constitutional rights.[5]

Undertaking the Saucier analysis, the Court concludes that the defendants' motion is well-taken and that they are entitled to qualified immunity in connection with the plaintiff's claim in this regard.

An inmate retains his rights under the First Amendment only to the extent not inconsistent with his status as a prisoner and with legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). In evaluating prison conduct which limits an inmate's right to possess publications, it is appropriate to evaluate the regulation or action under a reasonableness standard. Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). See also Brewer v. Wilkinson, 3 F.3d 816 (5th Cir. 1993), cert. denied, 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994). In other words, such actions may be valid if they are reasonably related to legitimate penological interests, and in making this reasonableness evaluation, the Supreme Court has suggested that the four-part inquiry utilized in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), is appropriate. Thornburgh v. Abbott, supra, 490 U.S. at 413, 109 S.Ct. at 1881. The relevant factors are whether the defendants' action has a logical connection to the legitimate government interests invoked to satisfy it, whether there are alternative means of exercising the rights that remain open to the inmate, the impact that accommodation of the asserted constitutional rights will have on other inmates, guards and prison resources, and the presence or absence of

---

[5] The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory. Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

ready alternatives that fully accommodate the prisoner's rights at a <u>de minimis</u> cost to valid penological interests. <u>Id.</u>

In the instant case, the Court finds that the decision to confiscate the referenced photograph, which depicted a fully nude infant, was logically related to the legitimate governmental interest of prison order and security. In <u>Guajardo v. Estelle</u>, 580 F.2d 748 (5th Cir. 1978), the Fifth Circuit considered the authority of prison officials to censor incoming publications that they considered to be sexually explicit. In rejecting the argument that prison officials could ban only materials that had been judicially declared to be obscene, the Fifth Circuit held that an inmate's First Amendment rights cannot be evaluated without taking into account the inmate's environment and the characteristics of the receiving audience. <u>Id.</u> at 762. Noting that non-consensual homosexual activity is a significant problem in prison, the Fifth Circuit concluded that officials can, consistent with the First Amendment, limit access to sexually explicit materials. The Fifth Circuit further set out the following guidelines: "Before delivery of a publication may be refused, prison administrators must review the particular issue of the publication in question and make a specific, factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal and sexual behavior. Prisoners must, of course be allowed to appeal that decision through proper administrative channels." <u>Id.</u> (citations omitted). <u>See also</u> <u>Thompson v. Patteson</u>, 985 F.2d 202 (5th Cir. 1993).

In the instant case, prison officials may be seen to have acted reasonably in connection with the single photograph depicting a nude infant. They reviewed the referenced photograph and found it to be inappropriate under the applicable regulation. They advised the plaintiff of this determination, and the plaintiff was thereafter allowed

to appeal this determination. In the context of prison security and the potential for deviant sexual activity, this does not appear to have been an unreasonable application of federal law. Further, and more importantly in the Court's view, the deprivation of the single referenced photograph, even if in theoretical violation of the plaintiff's constitutional rights under the First Amendment, was a purely de minimis deprivation which cannot be seen to rise to the level of a violation cognizable under 42 U.S.C. § 1983. In this regard, courts have normally concluded that deprivations of such a minimal nature do not support a claim for relief under § 1983. See Morris v. Powell, 449 F.3d 682 (5th Cir.), cert. denied, 549 U.S. 1038, 127 S.Ct. 596, 166 L.Ed.2d 443 (2006) (holding that, in order to state a viable constitutional claim of retaliation under the First Amendment, an inmate plaintiff must allege more than a de minimis or inconsequential "retaliatory adverse act"); Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (holding that a de minimis use of excessive force does not support a claim of cruel and unusual punishment under the Eighth Amendment). Accordingly, the plaintiff's claim relative to the confiscation of this single photograph is unfounded.[6]

Turning to the plaintiff's claim that four books were allegedly lost or misplaced in December, 2008, articulated in grievance No. LSP-2009-0687, with a value of approximately $42.00, the plaintiff makes no claim, and did not in the referenced grievance, that this deprivation resulted in a violation of his First Amendment rights or resulted from a

---

[6] Although the plaintiff also complained in the referenced grievance that several additional photographs and an item of personal correspondence were withheld from him, the photographs and correspondence were apparently returned to him upon completion of the administrative appeal.

misapplication of the prison regulation which deals with inmates' receipt of publications.[7] Rather, it appears that these books were simply lost or mislaid and could not thereafter be located. In the context of a prison which houses more than 5,000 inmates and in light of the plaintiff's apparent practice of ordering and/or subscribing to numerous books and publications on a regular basis, this claim appears to be more in the nature of a claim of negligence which is not cognizable under 42 U.S.C. § 1983. Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990); Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987). Further, to the extent that the plaintiff's claim relative to these books may be characterized as a claim of an alleged deprivation of property without due process of law, this claim is also not properly before this Court. Random and unauthorized deprivations of property by state officials do not violate the federal constitution if an adequate post-deprivation state remedy exists. Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 383 (1984). In this regard, the law is well-settled that Louisiana has ample remedies under which the plaintiff could have proceeded against the defendants for recovery of his property or for

---

[7] In its entirety, grievance No. LSP-2009-0687 states:

On December 28, 2008, a package arrived in the prison's mailroom for me. My records show that the prison recieved [sic] the package and did not return it to the sender. I never recieved [sic] any of the four paperback books contained in the package and I never signed the required reciept [sic] form showing that the books were delivered to me.
  Attached is an invoice and UPS tracking report from the bookseller Amazon.com. The total value of the four books is shown to be $49.02. The titles of the books are listed on the invoice.
  All necessary proof is attached to show this claim is valid and legitimate.

reimbursement for its loss. Marshall v. Norwood, 741 F.2d 761 (5th Cir. 1984). Finally, it appears that the referenced books have in fact been found and provided to the plaintiff. See rec.doc.no. 55, wherein the plaintiff states that the defendants, on March 10, 2010, "delivered the four books that were previously hidden in the mailroom's closet." Accordingly, this claim as well must be dismissed.

Finally, there is no claim properly asserted in any of the plaintiff's exhausted grievances (1) that Department Regulation No. C-02-009 is unconstitutionally vague, overbroad and racially discriminatory, (2) that prison officials have withheld his publications in retaliation for his exercise of First Amendment rights, or that (3) Spanish language publications have been improperly denied to him. In Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004), the Fifth Circuit reiterated that the primary purpose of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'". Id. In other words, "the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." Id. Accordingly, to be deemed adequate, an inmate's administrative grievance must be sufficiently specific, both in specifying a complaint and, where appropriate, in identifying the person or persons responsible for the events complained of.

In the plaintiff's grievances which have been found to be exhausted and properly before the Court in the instant case, there is no claim clearly presented relative to retaliation, relative to the alleged unconstitutionality of Department Regulation No. C-02-009 or relative to the denial of Spanish-language publications. Although the plaintiff seeks to assert that he presented these claims in second-step appeals of

grievance Nos. LSP-2008-2196 (which was filed relative to the single claim, addressed above, regarding the denial of an item of correspondence which included a photograph of a nude infant) and/or LSP-2008-1979 (which was filed relative to a single claim regarding the denial of adhesive address labels), this assertion is clearly unfounded. Upon denial of these single-issue grievances at the institutional First Step, the plaintiff apparently sought to forward administrative appeals to Departmental officials, and sought to assert therein a litany of claims essentially unrelated to the initial grievances. These second-step appeals do not comport with proper procedure and certainly did not afford prison officials an adequate opportunity at the First Step to respond to these claims. As recognized in Garrett v. Adams, 2007 WL 838927 (E.D. Tex. March 14, 2007), claims may be deemed unexhausted when an inmate "presents different arguments in his Step Two grievance ... than he does in his Step One grievance", because by doing so, the inmate "[does] not give fair notice to prison officials as to what exactly his complaint [is]." Accordingly, the plaintiff's second-step appeals in this case provided no fair opportunity for prison officials at the institutional level to address his claims. Therefore, the plaintiff's claims relative to these issues are subject to dismissal as a result of his failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e. Id.[8]

Although the plaintiff seeks to invoke the supplemental jurisdiction of this court, district courts may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if the claims raise

---

[8] Having concluded that the plaintiff has failed to exhaust administrative remedies relative to his claim regarding the alleged unconstitutionality of Department Regulation No. C-02-009, there is no need for the Court to address the plaintiff's pending motion for summary judgment, which motion is addressed solely to this issue. Accordingly, the plaintiff's pending motion should be summarily denied.

novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that the plaintiff's federal claims be dismissed, the Court concludes that it is appropriate for the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

## RECOMMENDATION

It is recommended that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims and that the plaintiff's Motion for Summary Judgment, rec.doc.no. 28, be denied. It is further recommended that the defendants' motions for summary judgment, rec.doc.nos. 47 and 84, be granted, dismissing the plaintiff's unexhausted claims, without prejudice, pursuant to 42 U.S.C. § 1997e, and dismissing his remaining claims as being without constitutional merit, and that this action be dismissed.

Signed in chambers in Baton Rouge, Louisiana, December 6, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**